UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Catherine Guay

    v.

Andrew M. Saul, Commissioner,
Social Security Administration[1]

Civil No. 19-cv-08-JD
Opinion No. 2019 DNH 166

O R D E R

Catherine Guay seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision denying her applications for disability insurance benefits under Title II and supplemental security income under Title XVI. In support, she contends that the Administrative Law Judge ("ALJ") improperly assessed her residual functional capacity and failed to meet the Commissioner's burden at Step Five of the sequential analysis used in social security decisions. The Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as the Acting Commissioner of the Social Security Administration. Andrew M. Saul has since been appointed Commissioner and has been automatically substituted. See Fed. R. Civ. P. 25(d).

whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings if they are supported by substantial evidence. § 405(g); Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).. Substantial evidence is "more than a scintilla of evidence" but less than a preponderance. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 887 F.3d at 13.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520 & 416.920.[2] The claimant bears the burden through the first four steps of proving that his impairments preclude him from working. Purdy,

---

[2] Because the regulations implementing the applicable standards for disability under Title II and Title XVI are the same for purposes of this case, the court will cite the Title II regulations in Part 404. See Sullivan v. Zebley, 493 U.S. 521, 525, n.3 (1990).

2

887 F.3d at 9. At the fifth step of the sequential analysis, the Commissioner bears the burden to show that a claimant can do work other than her past work. § 404,1520(a)(4); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

Background

In February of 2015, Catherine Guay injured her index and "long" fingers on her left hand, her dominant hand, when she tried to unblock a snowblower. Although the wounds healed, her fingers remained stiff and painful with limited range of motion. She also had previously experienced anxiety and depression, related to aortic bypass surgery, which increased after the injury to her fingers.

Guay returned to her job at a taxicab company after she injured her fingers. In September of 2015, she left the cab company and worked as an assembler for a medical device company. She left that job a year later because of pain in her left (injured) hand. During that time, she was treated by Dr. Heaps at the New Hampshire Orthopaedic Center and PCP APRN Odonell at St. Joseph's Hospital.

On September 30, 2016, Guay filed applications for disability insurance benefits and supplemental security income.

Guay had examinations by consultative medical examiners, as requested by the Social Security Administration.

A hearing before an ALJ was held on October 26, 2017. Guay and a vocational expert testified at the hearing. The ALJ posed a hypothetical question of a person limited to light work, with the top weight being twenty-five pounds lifted with the right nondominant arm. The hypothetical excluded use of ladders, ropes, and scaffolds; allowed occasional use of stairs; and excluded fine motor use of the left dominant hand for punching and gripping. In response, the vocational expert said that person could not do any of Guay's past work. The vocational expert also testified that a person who could not handle with her dominant hand would be precluded from all work at the light and sedentary exertional levels.

The ALJ continued the hearing in order to have a medical expert testify. The hearing resumed on February 1, 2018. Guay testified at the hearing, along with an orthopedic surgeon, Dr. Darius Ghazi, M.D., and a different vocational expert. Dr. Ghazi testified that the injury to Guay's fingers caused them not to function which interfered with the function of her left hand. Because of that condition, Dr. Ghazi said that Guay could not do anything bi-manually. Otherwise, her functional capacity depended on how well she could use her left hand. The ALJ did not let Dr. Ghazi testify about mental issues that would affect

4

Guay's motivation for rehabilitation.  He said that Guay could climb stairs, but not a ladder, and should avoid hazards.

The ALJ described a hypothetical person to the vocational expert as one who could do light work but had to avoid hazards, ladders, ropes, and scaffolds, and crawling and was limited to rare use of her left, dominant, hand for fingering or handling. The vocational expert said the person could not do Guay's past work.  She identified jobs that the person could do, which were furniture rental clerk, usher, and school bus monitor.

With respect to the furniture rental clerk and usher, the vocational expert clarified that the Dictionary of Occupational Titles ("DOT") described them as requiring occasional rather than only rare use of the hands but did not specify which hand would be used or whether both hands were necessary.  Based on that lack of specificity, the vocational expert thought the furniture rental clerk and usher jobs could be performed with the nondominant hand.  She qualified her response further by saying that there was a very limited base of those jobs.

Guay's attorney represented to the vocational expert that Guay had testified during the previous part of the hearing, where a different vocational expert appeared, that she could not write with her right hand or use a keyboard mouse with her right hand.  In response, the vocational expert said that those limitations would eliminate the furniture rental clerk job.  She

also said, however, that the usher job "could perhaps still be performed" depending on her ability to accommodate the lack of use of her left hand with her nondominant right hand. Doc. 8-2 at 54. The vocational expert acknowledged that the school bus monitor job could require use of both hands and that only a small number of jobs were available.

The ALJ issued a decision on February 14, 2018. The ALJ found that Guay had a severe impairment because of a swan neck deformity of her index finger and a malunion of her long finger on her left dominant hand. Despite that severe impairment, the ALJ found that Guay retained the functional capacity to perform light work except that she could use her left hand only rarely for fingering or handling, less than 5% of the work day; could not climb ladders, ropes, or scaffolds; and needed to avoid all hazards. Based on the second vocational expert's testimony, the ALJ found that Guay could work, doing jobs such as furniture rental clerk, usher, and school bus monitor. For that reason, the ALJ found that Guay was not disabled.

## Discussion

In support of her motion to reverse the Commissioner's decision, Guay challenges the residual functional capacity assessment, including his evaluation of the medical evidence, and his finding at Step Five. The Commissioner moves to affirm,

and in support, disputes Guay's analysis of the evidence and argues that the vocational expert sufficiently explained the difference between her opinion and the DOT descriptions of the cited jobs.

A.  Residual Functional Capacity

The residual functional capacity assessment is a finding of the most a claimant can do in a work setting despite her limitations caused by impairments. 20 C.F.R. § 404.1545(a)(1). In making that assessment, an ALJ considers the combined effect of all impairments, including any impairments that were not found to be severe. § 404.1523(c).  An ALJ's assessment is reviewed to determine whether it is based on proper legal standards and is supported by substantial evidence. Nguyen, 172 F.3d at 35-36.

1.  Combined Effect

Guay contends that although her injured left hand was her primary impairment, the combined effect of that impairment with her depression, anxiety, and peripheral vascular disease decreased her ability to function.[3]  She argues that the ALJ

---

[3] Although Guay mentions peripheral vascular disease, she provides no developed argument to show the disease caused any impairment in her ability to function.

7

erred in failing to discuss the limiting effects of her depression and anxiety. She also faults the ALJ for failing to allow Dr. Ghazi, the orthopedic medical expert, to testify at the hearing about the effects of her depression and anxiety. She contends that the ALJ should have included a mental limitation for simple decisions in the residual functional capacity assessment based on Dr. Gustavson's evaluation.

      a. <u>Dr. Ghazi</u>

During his testimony about the injury to and function of Guay's left hand, Dr. Ghazi mentioned the effects of depression and anxiety on a patient's motivation for rehabilitation. The ALJ instructed Dr. Ghazi not to testify about mental health matters. Guay asserts that the ALJ's restriction on Dr. Ghazi's testimony was error.

Dr. Ghazi is a medical expert in the field of orthopedic surgery. He is not a psychiatrist or a psychologist and did not claim to have expertise in mental health. Dr. Ghazi stated that mental issues were beyond his field of expertise.

During questioning by Guay's attorney, however, Dr. Ghazi agreed with the attorney that his studies and rotations during medical school gave him "psychological expertise in a way." Doc. 8-2, at *46. The Commissioner points out, based on Dr. Ghazi's statement of professional qualifications in the record,

that he completed his medical training in the 1960s and worked exclusively in orthopedics after that time. Given Dr. Ghazi's experience and his stated expertise in orthopedics rather than psychology, the record does not support Guay's argument that Dr. Ghazi was also qualified to give opinions about her mental health issues. Guay has not shown that the ALJ erred in focusing Dr. Ghazi's testimony in the area of his expertise, orthopedics. See § 404.1527(c).

      b. Dr. Gustavson

The ALJ gave great weight to the opinion of examining consultant, Dr. Gustavson. Guay contends that the ALJ erred in failing to include a limitation in the residual functional capacity to making simple decisions, as found by Dr. Gustavson. In response, the Commissioner argues, among other things, that the lack of that limitation is harmless because the jobs identified by the vocational expert, which support the ALJ's finding at Step Five, only require simple decisions.

The three jobs identified by the vocational expert, furniture rental clerk, usher, and school bus monitor, are all unskilled jobs (SVP 2). Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "Unskilled work is work which needs little or no

9

judgment to do simple duties that can be learned on the job in a short period of time." § 404.1568(a). Guay has not shown that a limitation for simple decisions would have eliminated the jobs identified by the vocational expert and relied on by the ALJ.

    c.  APRN Odonnell

Guay also faults the ALJ for giving little weight to the opinion of APRN Odonnell about her impairment in completing a work week and in maintaining a consistent pace because of psychological symptoms. An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1). Medical opinions are evaluated based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the understanding the source has of the social

security system. § 404.1527(c); see also Bunnell v. Commissioner of Social Security, 18-cv-569-LM, 2019 WL 4201068, at *4 (D.N.H. Sept. 5, 2019).

The ALJ explained that he considered APRN Odonnell's opinion about Guay's limitations in completing a work week, maintaining pace, and maintaining concentration. He noted that Guay stated in her function report, contrary to APRN Odonnell's evaluation, that she had the ability to pay attention "forever". The ALJ also noted that Odonnell was not a specialist in mental health and is not an acceptable medical source. Therefore, the ALJ adequately explained the weight given to APRN Odonnell's opinion.

2. Left Hand Pain

Guay challenges the ALJ's finding that her statements about the intensity, persistence, and limiting effects of her hand injury were not entirely consistent with the medical evidence. Guay contends that the ALJ did not adequately address the pain she experienced in her hand or discuss Dr. Ghazi's testimony that the hand is a "very sensitive organ." The ALJ did limit Guay's use of her hand to less than 5% of the time. She does not explain why that limitation does not adequately address her hand pain.

3. Use of Left Hand

Guay contends that the ALJ improperly rejected the opinions of Dr. Wolf and Dr. Ghazi that she could not use her left hand and instead found that she could rarely use her left hand with no supporting medical opinion. The Commissioner acknowledges the differences between the ALJ's assessment and Dr. Wolf's opinion, which Dr. Ghazi accepted, but argues that the ALJ properly explained the basis for his finding. The Commissioner further argues that substantial evidence supports that finding.

The ALJ pointed out that, contrary to Dr. Wolf's view of Guay's limitation, Dr. Ghazi found that Guay could still use her thumb and the uninjured fingers on her left hand to grasp and squeeze. Guay also testified that she could write using her thumb and the uninjured fingers, and the record shows that she completed her function report and other administrative forms by writing her answers herself with clear and legible results. The ALJ also noted that Guay testified that she could do other activities using her left hand and that she had worked for more than a year in an assembly job that required use of both hands.

4. Result

Guay has not shown that the ALJ erred in the residual functional capacity assessment. Substantial evidence in the record supports the ALJ's finding.

12

B.  Step Five Finding

As it stated above, the Commissioner bears the burden at the fifth step of the sequential analysis to show, based on the claimant's residual functional capacity, that she can do work other than her past work.  Yuckert, 482 U.S. at 146 n.5; Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  In cases where the Medical-Vocational Guidelines are not applicable, an ALJ may rely on information from the DOT and the testimony of a vocational expert as evidence to satisfy the Commissioner's Step Five burden.  §§ 404.1566(d) & (e); SSR 00-4p, 2000 WL 1898704.  A vocational expert's opinion, however, generally must be consistent with occupational information in the DOT.  Id. at *2.  If the vocational expert's testimony conflicts with the DOT, the ALJ must resolve this conflict by getting a reasonable explanation from the vocational expert.  Id.

The ALJ found, based on the vocational expert's testimony, that Guay could do the jobs of furniture rental clerk, usher, and school bus monitor.  Guay contends that ALJ could not rely on that testimony because it conflicted with the DOT and was not reliable.  The ALJ noted the conflict, that those jobs required occasional handling and fingering and he had limited Guay to rare use of the left hand for those activities.  The ALJ found,

however, that the vocational expert gave a reasonable explanation for her opinions.

Specifically, the ALJ stated that based on the vocational expert's testimony the furniture rental clerk job required occasional handling and fingering but did not require that activity with both hands and that the vocational expert testified that it required only minimal data entry.  The ALJ found that was consistent with the record which showed Guay could do some limited writing.  The vocational expert testified that the usher job could be done using the right hand.

Guay contends that the explanation was not reasonable.  In support, Guay cites her attorney's hypothetical posed to the vocational expert that described her as being unable to use her right hand to take notes or use a mouse or keyboard.  She argues that because the vocational expert eliminated rental furniture clerk job based on those criteria and because the requirements of the usher job could not be met with those limitations, the ALJ could not rely on the vocational expert's opinion.

Contrary to Guay's attorney's representation to the vocational expert, the record shows that Guay testified she could not use her injured <u>left</u> hand for those activities.  She also did not testify that she was unable to do those activities with her right hand.  Guay testified that she depended a lot on

14

her right hand to do things.[4]  Although Guay also challenges the vocational expert's explanation based on the O*NET description of the job and common sense, the vocational expert's opinion must be consistent with the DOT, not other sources.  [Strong v. Berryhill](), 2019 WL 2442147, at *6 (W.D.N.Y June 12, 2019); [Poissant v. Colvin](), 2014 WL 1686816, at *7 (D. Me. Apr. 29, 2014).

The ALJ found that the vocational expert provided a reasonable explanation for the inconsistency between her opinions and the DOT descriptions of the furniture rental clerk and usher jobs.  Guay has not shown that the ALJ erred in that finding.  Therefore, the vocational expert's opinions that Guay could do the jobs of rental furniture clerk and usher provide substantial evidence to sustain the Commissioner's burden at Step Five.[5]

---

[4] The record shows that Guay was able to do laundry, make coffee, do dishes, make breakfast, and help her grandson take a bath.  She worked for a year after the injury to her left hand in an assembly job, which required her to use both hands.

[5] It is therefore unnecessary to consider the third job identified, school bus monitor.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 11) is denied. The Commissioner's motion to affirm (document no. 13) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 25, 2019

cc: Counsel of record.